IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIA CLAVIJO-MIRANDA,

    Plaintiff,

             v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**Civil No. 11-1923 (SEC)**

**OPINION AND ORDER**

    The plaintiff, Julia Clavijo-Miranda ("Plaintiff"), brings this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of the Social Security Administration's (the "Commissioner") denial of her application for disability insurance benefits (Docket # 2). Plaintiff filed a memorandum of law supporting her request (Docket # 15), and the Commissioner opposed (Docket # 16). After reviewing the filings and the applicable law, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**Factual and Procedural Background**

    On December 30, 2005, Plaintiff filed an application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq., where she claimed to have been disabled since March 14, 2003. Administrative Transcript ("Tr.") 15, 749-52, 759. The application for disability benefits was denied initially and again upon reconsideration. Id. at 716, 720-26.

    Plaintiff then sought a hearing before an administrative law judge ("ALJ"), which was held on September 3, 2009. Id. at 29-61. At the hearing, Plaintiff, who was represented by counsel, appeared and testified. Id. at 31. The ALJ ultimately concluded that Plaintiff had not been disabled, because step four of the sequential analysis showed that she could do her past relevant work as a "toll collector." Id. at 22.

    To reach his conclusion, the ALJ compared Plaintiff's medical history with her hearing testimony. The medical history included records from various treating sources: (1) Progress

**CIVIL NO. 11-1923 (SEC)**                                                                                           Page 2

notes from the State Insurance Fund and APS Clinic; (2) Drs. Jorge Dávila and Zaida Boria, a consulting neurosurgeon and a neurologist, respectively; (3) Dr. Reinaldo Kianes, a consultive psychiatrist; (4) Dr. Vicente Sánchez, a State agency medical consultant; and (5) Dr. Fernando García, Plaintiff's treating physician. The ALJ also heard testimony from a Vocational Expert ("VE"). The following excerpts from the ALJ's memorandum of opinion best illustrate the ALJ's methodology and findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2008.
>
> *2.* The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 14, 2003 through her date last insured of June 30, 2008.
>
> 3. During the period at issue the claimant had the following severe impairments: high blood pressure, diabetes mellitus, cervical and lumbar myofascial syndrome, status post right carpal tunnel syndrome and major depressive disorder.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Part 404, Subpart P, Appendix 1 of Regulation No. 4.
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual function capacity to perform light work as defined in 20 CFR 404.1567(b) except for complex tasks.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a toll collector. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity ["RFC"].
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time during the unadjudicated period from January 13, 2007 through June 30, 2009, the last day insured.

Tr. 18-22 (citations omitted).

<u>**CIVIL NO. 11-1923 (SEC)**</u>                                                                                           **Page 3**

Dissatisfied, Plaintiff appealed. But the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. <u>Id.</u> at 1-8. This complaint followed. Docket # 2.

On appeal, Plaintiff raises two points of error. First, she alleges that because the ALJ did not prepare a Mental Residual Functional Capacity Assessment ("MRFCA"), he failed to properly rate Plaintiff's mental limitations, as allegedly required by the Social Security Administration regulations. Docket # 15, pp. 17-18. Relatedly, Plaintiff asserts that because the ALJ concluded that she suffered from "several mental impairment," he was "obliged to enlist expert medical testimony" and to prepare a Psychiatric Review Technique Form ("PRTF") in order to properly conclude that she could perform her past relevant work. <u>Id.</u>, p. 18. And second, Plaintiff faults the ALJ for presenting the VE with a hypothetical that, she says, did not state her condition and complaints. <u>Id.</u>, p. 19. The Commissioner opposed all of Plaintiff's contentions. Docket # 16.

**Standard of Review**

The scope of review over the Commissioner's final decision is limited both by statute and case law. <u>See</u> 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive . . . ." In <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), the Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." The First Circuit has therefore directed district courts within this circuit to uphold the Commissioner's "findings . . . if a reasonable mind, reviewing the evidence as a whole, could accept it as adequate to support his conclusion." <u>Irlanda Ortiz v. Secretary of H.H.S.</u>, 955 F.2d 765, 769 (1st Cir. 1991). Accordingly, even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. <u>Evangelista v. Secretary of H.H.S.</u>, 826 F.2d 136, 144 (1st

**CIVIL NO. 11-1923 (SEC)**                                                                                                        **Page 4**

Cir. 1987). That is, absent a legal or factual error in the evaluation of a claim, the Commissioner's denial of disability benefits stands. Sullivan v. Hudson, 490 U.S. 877, 885 (1989); Seavey v. Barnhart, 276 F.3d 1, 15 (1st Cir. 2001); Manso-Pizarro v. Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).

**Applicable Law and Analysis**

*Analysis of Mental Impairment*

As noted above, Plaintiff first argues that because the Commissioner prepared neither a PRTF nor a Mental Residual Functional Capacity Assessment, he did not properly evaluate her mental condition under the Social Security regulations. This argument is without merit.

At step two of the sequential evaluation process for determining whether an individual is disabled, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires the ALJ to follow a special psychiatric review technique, see 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d), providing that the decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)" and also "must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this subsection." 20 C.F.R. § 404.1520a(e).[1] Where as here, ALJ finds that the claimant has a severe impairment, the ALJ must proceed to step three. 20 C.F.R. § 404.1520(a)(4)(ii).

Plaintiff's argument that ALJ's failed to "prepare" a PRTF is based on outdated version of the relevant regulation, 20 C.F.R. § 404.1520a; the Social Security regulations no longer

---

[1] Paragraph (c) identifies the following "four broad functional areas:" (1) "activities of daily living;" (2) social functioning;" (3) concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3).

**CIVIL NO. 11-1923 (SEC)**                                                                                          Page 5

require the ALJ to append a PRTF to the hearing decision. See, e.g., Blackmon v. Astrue, 719 F. Supp. 2d 80, 92 (D.D.C. 2010). Rather, the regulations merely require the ALJ to follow the special psychiatric review technique described above, which the ALJ did here. The regulations further provide that the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique," 20 C.F.R. § 404.1520a(e); Keyser v. Comm'r of Soc. Sec. Admin., 648 F.3d 721, 726 (9th Cir. 2011), and the ALJs' decision also followed this procedure. In doing so, the ALJ complied with the requirements of 20 C.F.R. § 404.1520a in its present form by "incorporat[ing] the pertinent findings and conclusions based on the technique." Review of the decision demonstrates that the ALJ's decision includes discussion of the Plaintiff's "significant history, including examination and laboratory findings," regarding her alleged mental impairments. 20 C.F.R. § 404.1520a(e)(2). The ALJ cited to medical evidence from the APS Clinic indicating that, while Plaintiff had a history of depression, "[h]er grooming and hygiene was adequate. She was alert, coherent, relevant and oriented [,] [and her] insight and judgment were adequate. Tr. 21. The ALJ also referred to the medical evidence from the State Insurance Fund showing that, although she had been diagnosed with depressive disorder, she "was noted as cooperative, logical, coherent, relevant, oriented, [and] with preserved memory . . . ." Id. [2]

Moreover, the ALJ's decision extensively discusses Dr. Kianes' general psychological evaluation of Plaintiff, in which Dr. Kianes determined that she was cooperative; her personal

---

[2] Ultimately, the ALJ gave no controlling weight to the State Insurance Fund psychiatric findings, "given the short span of evaluation and [their] unremarkable nature . . . ." Tr. 21-22. Likewise, the ALJ rejected "the treatment notes at the APS that are also unremarkable in findings and seem close to the findings by the consultative sources." Tr. 22. Neither did the ALJ gave any controlling weight to Dr. Garcia's report, "as he noted only conservative treatment and no severe functional limitations."Tr. 22. Because Plaintiff has not alleged that the ALJ erred in rejecting such medical evidence, the Court need not decide the propriety of the ALJs' decision on this point. "If there was error in how the ALJ proceeded, . . . she has waived the defect." Soto-Cedeño v. Astrue, 380 Fed. Appx. 1, 3 (1st Cir. 2010) (per curiam) (citations omitted).

**CIVIL NO. 11-1923 (SEC)**                                                                     **Page 6**

hygiene was good, and there were no delusions, phobias, obsessive ideas, ideas of reference, or persecutory ideas. Tr. 20-21. She even goes shopping and attends church. Tr. 20. Dr. Kianes also determined that Plaintiff's motor activity and gait were normal; that she was alert and in contact with reality, and that she understood questions. According to Dr. Kianes, moreover, Plaintiff exhibited normal flow of thoughts, and there was no blocking or flight of ideas. Neither were there suicidal or homicidal ideas. Tr. 20. In sum, Dr. Kianes's report contained many normal findings.

Based on the foregoing, the ALJ "include[d] a specific finding as to the degree of limitation in each of the [four] functional areas . . . ." 20 C.F.R. § 404.1520a(e). The ALJ evaluated Plaintiff's mental condition under the technique, finding that Plaintiff had mild restriction in activities of daily living; moderate difficulty in maintaining social functioning; moderate difficulty in maintaining concentration, persistence or pace; and that she had experienced no episodes of decompensation, each of extended duration. Tr. 19. The ALJ thus followed the special psychiatric review technique, although he did not append a PRTF to his decision. Because the written decision documented the ALJ's application of the technique, thereby including a specific finding as to the degree of limitation in the four functional areas, the ALJ committed no reversible error. Accordingly, substantial evidence supports the ALJ's foregoing determinations. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.1981) ("[The Court] must uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Plaintiff's contention that the ALJ had to complete a MRFCA is also unpersuasive. She has cited no authority holding that, besides performing the special psychiatric review technique, the ALJ must undertake a separate MRFCA analysis. Quite the opposite is true: The ALJ has to neither prepare nor review a MRFCA. See Ehrisman v. Astrue, 377 Fed. Appx. 917, 919

**CIVIL NO. 11-1923 (SEC)**                                                                                               **Page 7**

(11th Cir. 2010) (rejecting assertion that in addition incorporating the PRT mode of analysis into his findings and conclusions, "the ALJ must complete a separate MRFCA form or undertake a separate MRFCA analysis"); Pierson v. Commissioner of Social Sec., No. 12-11198, 2012 WL 5358978, at *3 (11th Cir. Oct. 31, 2012) (unpublished) ("[The claimant] has presented no authority, and we are aware of none, indicating that an ALJ must complete a separate MRFCA in addition to performing a PRTF.").

Here, as concluded above, the ALJ's decision appropriately incorporated the special psychiatric review technique mode of analysis into his findings and conclusions, as required by the Social Security regulations. See id.  The ALJ's mental findings and assessment of Plaintiff's mental RFC were based on a review of all of the evidence of record.  The ALJ specifically noted that progress notes from the APS Clinic from May 23, 2007 through August 5, 2009, indicated that plaintiff was alert, coherent, relevant, and oriented, with adequate insight and judgment. Tr. 20, 662, 668, 674, 682, 688, 694, 700, 706. The ALJ also considered Plaintiff's Global Assessment of Functioning scores, which indicated mild-moderate symptoms or limitations. Tr. 20.[3] Substantial evidence thus supported the ALJ's finding regarding Plaintiff's mental condition.

Next, Plaintiff contends, without much in the way of an argument and without providing any authority, that the ALJ should have obtained a medical expert to testify about her mental condition. But the ALJ, not a medical expert, is responsible for assessing a claimant's RFC. 20

---

[3] The Global Assessment of Functioning, or GAF, is a scale that represents the clinician's judgment about a patient's psychological, social, and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev.2000). Importantly, the GAF provides a way for a mental health professional to convert raw medical data of an individual's mental functioning into a general assessment, understandable by a lay person. See Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir.2002) (noting that a GAF score may be of "considerable help" to an ALJ in formulating a claimant's mental RFC). Plaintiff's score of 55 to 60 corresponds to moderate symptoms. Tr. 20.

**CIVIL NO. 11-1923 (SEC)**                                                                                          Page 8

C.F.R. § 404.1546(c). And that is exactly what the ALJ did here. In any event, the decision whether to call a medical expert to testify at the hearing before the ALJ remains within the discretion of the ALJ, and the failure to do so may not provide the basis for vacating the decision of the Commissioner. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 5 (1st Cir.1987) (per curiam); see also, e.g., Horn v. Astrue, 345 Fed. Appx. 235, 236 (9th Cir.2009) (holding that an administrative law judge is not required to consult a medical expert upon a denial of disability); Nieves-Robles v. Commissioner of Social Sec., No. 11-1316, 2012 WL 642058, at *3 (D.P.R. Feb. 27, 2012). Consequently, this argument falls way short.

*Evaluation of Pain and Subjective Complaints*

Plaintiff next asserts that the ALJ erred in evaluating the credibility of her pain complaints and other symptoms. The Court is unpersuaded. Suffice it to say, as correctly alleged by the Commissioner, that the ALJ had no obligation to accept such allegations at face value. "In weighing the evidence and evaluating the claimant's credibility, the ALJ is entitled to consider the consistency and inherent probability of the testimony." Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 194 (1st Cir. 1987) (per curiam). A review of the record shows that, after carefully considering Plaintiffs' testimony, the ALJ reasonably found her testimony regarding the intensity, persistence, and limiting effects of her symptoms to be exaggerated. The ALJ reasoned:

> The undersigned finds that [t]he claimant's conditions may produce some of the symptoms alleged by her but not at the severity or intensity indicated. While the claimant complains of severe pain, it could not be reasonable to conclude that the minimal findings could be the basis for the degree of pain alleged by her. There is no evidence of any muscular weakness or sensory loss which is usually present in cases of severe and continuous pain. Thus, the undersigned concludes that the pain is not of such frequency, intensity or duration as to be disabling. Basically, it is found that heavy lifting or carrying may worsen her condition but otherwise she should function adequately. Tr. 21.

Such a determination is supported by the medical record. Plaintiff's testimony regarding hand and pain numbness (Tr. 20, 39) were belied by Dr. Boria's neurological evaluation that

**CIVIL NO. 11-1923 (SEC)**                                                                                                             **Page 9**

Plaintiff could handle and lift common objects weighing up to 20 pounds (Tr. 842), which is in turn consistent with her light-work RFC.[4] Dr. Davila's hand function description report similarly assessed that Plaintiff had no hand limitations Tr. 463, 1040. As to Plaintiff's neck and back pain complaints (Tr. 20, 39), these were contradicted by the medical evidence of record.[5] Further, in her functional report form Plaintiff states that she prepares breakfast,"do[es] the dishes, clean[s] the kitchen" (Tr. 142), "clean[s] the house" and drives her car "from time to time." Tr. 145.

      As to the ALJ's decision not to give significant weight to Plaintiff's subjective complaints, the Court finds no error in it. Such a determination falls within the ALJ's sound discretion, because "[s]ubjective symptoms must be evaluated with due consideration for credibility, motivation and medical evidence of impairment." Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985) (per curiam) (citing Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) (per curiam)). While Plaintiff complained of gastritis, she testified that medication helped her stomach problems (Tr. 47-48), and a barium swallow esophagogram was normal with no evidence of "constricting lesions," hiatal hernia, or other abnormality. Tr. 447. The ALJ, then, considered Plaintiff's subjective complaints, but rejected them insofar as they were inconsistent with her RFC for non-complex, light work. See Tr. 22 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."). Resolving

---

[4] Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

[5] For instance, x-rays taken on April 13, 2006 of Plaintiff's lumbosacral spine were normal and x-rays of her cervical spine showed only some straightening of the normal curvature, but were otherwise normal. Tr. 845. On October 22, 2007, x-rays of her cervical spine showed well preserved vertebral bodies and joint spaces, preserved cervical lordosis and no fracture or dislocation, Tr. 468, 1045, and x-rays of her lumbar spine showed well preserved vertebral bodies and joint spaces except for slightly decreased posterior L5-S1 interspace. Tr. 469, 1046.

**CIVIL NO. 11-1923 (SEC)**                                                                                              Page 10

that conflict was the ALJ's prerogative. Rodriguez, 647 F.2d at 218. And Plaintiff does not show that the record rationally required a contrary result. Bath Iron Works Corp. v. Dept. of Labor, 336 F.3d 51 (1st Cir. 2003).

Consequently, the ALJ's decision contains enough reasons for the credibility finding, and is "[s]ufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186, at *2. The ALJ's decision to reject Plaintiff's pain complaints is therefore supported by substantial evidence.

*The VE's Hypotheticals*

Having established that the ALJ committed no error in assessing Plaintiff's mental impairments, pain complaints and hence her RFC, the Court turns to Plaintiffs' other main imputation—that the ALJ erred by concluding that she could perform past relevant work as actually and generally performed. As said, Plaintiff specifically faults the ALJ for presenting the VE with a hypothetical that allegedly did not state her condition and complaints. For the reasons laid out below, the Court agrees with the Commissioner that no such error was committed.

At step four, a claimant will be found not disabled when he retains the RFC to perform "the actual functional demands and job duties of a particular past relevant job." Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (internal quotation marks and citations omitted). A claimant is in turn deemed capable of performing her past relevant work if her RFC allows her to do the job "[e]ither as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2); Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985); SSR 82-62, 1982 WL 31386, at *3.

In the instant case, the ALJ compared Plaintiff's RFC with the requirements of her past relevant work as a toll collector. Tr. 22. Relying on the VE's testimony that Plaintiff's past relevant work as a toll collector was light, unskilled work (Tr. 22, 55), the ALJ found that her

**CIVIL NO. 11-1923 (SEC)**                                                                 Page 11

RFC for light work, which excluded only complex tasks, permitted her to perform her past relevant work as a toll collector. Id. Because plaintiff could perform her past relevant work as a toll collector, the ALJ permissibly found that she was not disabled. 20 C.F.R. § 404.1520(f).

Plaintiff's contention that the VE was presented with a "cursory hypothetical which does not include the limitations brought out by the objective medical evidence of record," Docket # 15, p. 19, misreads the record. To the contrary, the questions posed to the VE "contain[ed] the relevant facts," Padilla v. Barnhart, 186 Fed.Appx. 19, 21-22 (1st Cir. 2006) (per curiam), because such hypothetical questions asked the VE to consider Plaintiff's "ability to perform under different assumptions." Id. at 22. Indeed, when the ALJ asked the VE to assume that she had additional limitations based on her subjective complaints and other symptoms — including dizziness, nausea, memory problems, and difficulty dealing with peers, supervisors, and the public — the VE testified that she could not perform any jobs. Tr. 57, 61. But the ALJ permissibly disregarded such hypotheticals, because they were neither compatible with her RFC finding nor supported by the record. Tr. 19-22. See Hernandez-Torres v. Secretary of Health and Human Services, 968 F.2d 1210, 1992 WL 164715, at *3 (1st Cir. Jul. 17, 1992) (per curiam) (unpublished table decision) (rejecting claimant's argument that the ALJ should have relied instead on VE's answer to favorable hypothetical, reasoning that "this argument . . . merely invites us to redetermine appellant's credibility, a matter necessarily committed to the ALJ").

Therefore, the third and fourth hypotheticals posed by the ALJ — which were in accord with RFC finding — "ha[ve] substantial support in the record, and, in response to . . . [these] hypothetical[s], the VE listed jobs that claimant could perform." Gonzalez-Rodriguez v. Barnhart, 111 Fed.Appx. 23, 25 (1st Cir. 2004) (per curiam).[6] Because the record supports the

---

[6] In the third hypothetical, the ALJ asked the following: "[If] the pain is minor to moderate and she is responding adequately to medication, where the limitations that I pointed out do not exist, I ask if the person could do the jobs that she performed before." Tr. 58. The fourth hypothetical essentially assumed Plaintiff's diagnostic of major depression as contained in AP's the July 6, 2008 Progress Note.

**CIVIL NO. 11-1923 (SEC)**                                                                                    **Page 12**

ALJ's rejection of some of Plaintiff's subjective complaints and other symptoms, these hypotheticals were not "flawed." Ramos v. Barnhart, 60 Fed.Appx. 334, 336 (1st Cir. 2003) (per curiam). Accordingly, the testimony of the VE that Plaintiff was able to perform her past work provided a basis for the ALJ's determination that Plaintiff was not disabled.

**Conclusion**

For the reasons stated, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 9th day of January, 2013.

                                *S/ Salvador E. Casellas*
                                SALVADOR E. CASELLAS
                                U.S. Senior District Judge

---

Tr. 700. In response to both hypotheticals, the VE answered that Plaintiff "would be able to perform the toll collector [job]." Tr. 59.